UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH A. PENN, | ) | CASE NO. 1:10CV1885 |
| | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF | ) | **ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Judith A. Penn seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

## I.    PROCEDURAL AND FACTUAL HISTORY

On August 25, 2008, Plaintiff filed an application for benefits alleging disability beginning October 10, 2001. ECF Dkt. #10-6 at 136-138.[1] The SSA denied Plaintiff's application initially and on reconsideration. ECF Dkt. #10-4 at 118-119. On July 11, 2008, Plaintiff filed a request for an administrative hearing. ECF Dkt. #10-2 at 43. On April 6, 2010, an ALJ conducted an administrative hearing *via* videoconference where Plaintiff, who was acting *pro se*, and vocational expert, Joseph J. Kuhar Jr. ("V.E.") offered testimony. ECF Dkt. #10-3 at 65-87. On April 27, 2010, the ALJ issued a Decision denying benefits. ECF Dkt. #10-2 at 49-60. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 38-40.

On August 25, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On January 7, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #16. On March 7, 2011 Defendant filed a brief on the merits. ECF Dkt. #14. No reply brief was filed.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

II.      **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from degenerative disc disease of the lumbar spine, obesity, and affective disorder, which qualified as severe impairments under 20 C.F.R. §404.1520(c), through her date last insured, September 30, 2003 ("DLI"). ECF Dkt. #10-2 at 54. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526). *Id.* at 55.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. 404.1567(b), except she can only occasionally climb, balance, stoop, bend, kneel, crouch or crawl due to her back disorder. Furthermore, Plaintiff can perform simple, routine, repetitive, one and two step tasks, but not in a fast paced or high production work environment due to her affective disorder. She can also work in jobs that require only minimal interaction with co-workers and the public. *Id.* at 57. Although the ALJ found that Plaintiff could not perform her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including Mold Cleaner, Vehicle Cleaner, and Office Cleaner. Therefore, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. *Id.* at 60.

III.     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a).   Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.**     **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.

-3-

Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.**  **ANALYSIS**

In this appeal, Plaintiff contends that the AJL erred in concluding that Plaintiff's uncontrolled hypertension and borderline intellectual functioning were not severe impairments. Second, Plaintiff argues that the ALJ did not properly evaluate the opinions provided by her treating physician and other source material.  Third, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's obesity.  Fourth, Plaintiff asserts that the ALJ did not fairly and fully develop and evaluate the evidence on behalf of an unrepresented claimant.

At step two, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." §404.1521(a).  The Regulations define basic work activities as being the " 'abilities and aptitudes necessary to do most jobs,' and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) '[u]nderstanding, carrying out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers, and usual work situations;' and (6) '[d]ealing with change in a routine work setting.'"  *Simpson v. Comm'r Soc. Sec.*, 344 Fed. Appx. 181, 190 (6th Cir. Aug.27, 2009) (quoting 20 C.F.R. §§ 404.1521(a)-(b) and 416.921(a)-(b)).

At step two, the term "significantly" is liberally construed in favor of the claimant.  The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d).  The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims."  *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985).  The Sixth Circuit has construed the step two severity regulation as a " *de minimis* hurdle" in the disability determination process.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p

(July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error.  *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).  However, all of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process. See C.F.R. §404.1529(d); C.F.R. §§ 416.920(d).  Here, the ALJ considered Plaintiff's obesity and borderline intellectual functioning during the third and fourth steps of the analysis.  Consequently, the ALJ's determination that those limitations were not severe impairments do not constitute error at step two.

Turning to Plaintiff's second argument, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

Plaintiff asserts that the ALJ failed to give the proper weight to the medical opinions of Plaintiff's treating physician, Dr. Pamela Lancaster, D.O. and Dr. Tara Oakley-Kist, a chiropractor who treated Plaintiff's back pain. Plaintiff concedes that Dr. Oakley-Kist's analysis constitutes "other source" material. Dr. Lancaster's treatment notes from September of 2000 to March of 2002 are part of the record. In a basic medical form completed on June 28, 2002 for the Ashtabula County Department of Job and Family Services, Dr. Lancaster identified hypertension, which was difficult to control, with a duration of six months, under medical conditions. ECF Dkt. #10-25, p. 447. The first treatment records for Dr. Lancaster are dated September 21, 2000, where Dr. Lancaster

acknowledges that Plaintiff's blood pressure is "excellent" and that she had been treated by a previous physician (Dr. DePasquale) who prescribed Cozaar and Norvasc, but that Plaintiff had recently stopped taking Cozaar. ECF Dkt. #10-18, p. 354. Dr. Lancaster's treatment records indicate that Plaintiff's blood pressure fluctuated, and, as a consequence, Dr. Lancaster changed or increased her medication, ECF Dkt. #10-26, p. 494, 497, although there is some evidence that her blood pressure was high because her failure to take the prescribed medication. ECF Dkt. #10-26, p. 480 (stopped taking medication), 481 (out of blood pressure pills).  There are also a number of appointments where Plaintiff's blood pressure was good. *Id.* at 489 (April 23, 2002 and May 6, 2002).

In addition to hypertension, Dr. Lancaster listed obesity and low back pain (bulging L4-5 disc) on the basic medical form.  She wrote that a physical therapy evaluation and treatment was the intended course of action.  ECF Dkt. 10-25, p. 447.  According to Dr. Lancaster, Plaintiff could stand/walk three hours in an eight hour day, two hours without interruption.  Plaintiff could sit for three hours in an eight hour day.  His notation regarding her ability to sit without interruption is illegible.  *Id.* at 448.  Dr. Lancaster concluded that Plaintiff had a marked limitation in her ability to bend, and moderate limitations in her ability to push/pull, reach, and engage in repetitive foot movements.  She identified no limitation of Plaintiff's ability to see, speak, hear, or handle.  Dr. Lancaster wrote that Plaintiff's physical limitation were expected to last between nine and eleven months.

However, Dr. Lancaster medical notes do not support her conclusion regarding Plaintiff's physical limitations.  Dr. Lancaster's medical notes indicate that Plaintiff was diagnosed at the September 21, 2000 appointment (Plaintiff's first appointment in the relevant time period) with controlled hypertension, hyperlipidemia by report, anxiety, and sinusitis. ECF Dkt. #10-18, p. 354. Dr. Lancaster acknowledged that Plaintiff was morbidly obese and that she has smoked a pack of cigarettes a day for the last twenty years.  At the time, Plaintiff was on estrogen therapy prescribed by a previous treating physician, presumably Dr. DePasquale.  Dr. Lancaster gave Plaintiff two-month sample packs of Paxil and Norvasc.

Plaintiff first complained to Dr. Lancaster about back pain on May 31, 2002.  Her medical

-7-

notes indicate that a chiropractor, presumably Dr. Oakley-Kist, took x-rays, but could not account for Plaintiff's severe pain. *Id.* at 491. Dr. Lancaster referred Plaintiff to Dr. David J. Horeja for an M.R.I., which she underwent on June 5, 2002. ECF Dkt. #10-24, p. 438. Dr. Horeja diagnosed mild degenerative loss of signal in the L4-5 disc. Although Dr. Horeja found that the sagittal images of the disc appear unremarkable, he noted that the axial images do suggest a left posterolateral broad-based disc bulging or perhaps protrusion. Dr. Horeja found no obvious nerve root compression. He found degenerative loss of signal of the disc at L5-S1 , as well as mild diffuse bulging without focal herniation or thecal sac compression. Dr. Horeja concluded that Plaintiff suffered from left posterolateral bulging or protrusion of L4-5 disc of questionable significance, and mild diffuse bulging of L5-S1 disc without thecal sac compression.

In medical notes from Plaintiff's June 10, 2002 appointment, Dr. Lancaster diagnoses "bulging discs" and advocates physical therapy. At Plaintiff's June 20, 2002 appointment, Dr. Lancaster prescribed Darvocet for pain management.  She reported continuing back pain at her appointments on June 25 and 28, 2010.  However, Plaintiff does not complain of back pain in the remaining medical notes. The remainder of the medical notes, which date from July 24, 2002 to September 10, 2002, describe Plaintiff's ongoing treatment for high blood pressure, pitting edema, and headaches. According to Dr. Lancaster's notes, Plaintiff's swelling and edema were caused by a change in blood pressure medicine. At the September 10, 2002 appointment, Dr. Lancaster notes that Plaintiff underwent a stress test, with normal results and that her lungs were clear. ECF Dkt. #10-26, 496.

The ALJ relied upon the fact that Dr. Lancaster acknowledged that Plaintiff's impairments were not expected to last more than 11 months when he chose not to include the limitations described in Dr. Lancaster's medical source statement in Plaintiff's RFC. The ALJ credited the medical statement of Dr. David Rath that confirmed that Plaintiff had a mechanical back discomfort, but found no significant physical impairment by objective criteria. ECF Dkt. #10-25, p. 453.

The ALJ  did not err when he did not include the limitations described by Dr. Lancaster in Plaintiff's RFC. Dr. Lancaster's medical notes do not support her conclusions regarding Plaintiff's physical impairments. After Plaintiff's back pain was diagnosed and treated, Dr. Lancaster's notes

reflect that Plaintiff did not complain of uncontrolled back pain in the following months. Likewise, although Plaintiff continued to complain about headaches and edema, Dr. Lancaster attributed those problems to a new blood pressure medication, and never indicated that they caused the degree of debilitating pain described in her medical source statement. Dr. Rath's analysis is consistent with Dr. Lancaster's treatment notes.

Dr. Oakley-Kist treated Plaintiff from January to June of 2002. There are no treatment note in the record. The only evidence in the record from Dr. Oakley Kist is a two-page functional capacity assessment completed on July 29, 2002. Dr. Oakley-Kist diagnoses spondylosis of unspecified site, without mention of myelopathy and thoracic or lumbosacral neuritis or radiculitis, unspecified, radicular syndrome of lower limbs. ECF Dkt. #10-24, p. 440. She indicates that Plaintiff "responds well" to electric stimulation, heat and cold packs, and chiropractic manipulation. She writes, "There are some weeks when she only has minimal pain in c/s and l/s. She is always worse if she doesn't get treatment." *Id.* Despite these findings, she concludes that "Pt has extreme difficulty w/ sitting, standing, walking, bending, lifting, carrying for more than a 2 hr. duration. She hears, speaks normal. She cannot do one thing for long periods of time without experiencing some sort of low back pain. I see no mental activities that she has problems with." *Id.* at 441.

The ALJ gave little weight to Dr. Oakley-Kist's opinion, based upon her statement that Plaintiff responded well to treatment and that at times Plaintiff suffered minimal pain. The ALJ also cited the lack of treatment notes in the record supporting a finding of extreme difficulty in sitting, standing, walking and bending for more than an hour. ECF Dkt. #10-2, p. 57. In addition to the fact that Dr. Oakley-Kist's assessment is inherently inconsistent, it is important to note that Plaintiff saw Dr. Lancaster on a regular basis during this time frame, and she only reported back pain in late May and June of 2002. ECF Dkt. #10-26, p. 491-94. Consequently, the ALJ did not err in giving little weight to Dr. Oakley-Kist's functional capacity analysis.

Furthermore, the ALJ considered Plaintiff's uncontrolled hypertension and borderline intellectual functioning at step three of the analysis. The ALJ specifically observed that the medical records established that Plaintiff's hypertension was controlled by medication, but that Plaintiff did not take her medication as required. Although Plaintiff claimed that she could not afford the

medication, this statement is at odds with her testimony at the hearing that she had insurance coverage through her husband's employer during the relevant time period. Moreover, when a claimant has no means to pay for treatment, her conditions are to be evaluated "in the absence of treatment," and if disabling, the ALJ must determine "if there is affordable treatment available." *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990). Here, the ALJ considered Plaintiff's uncontrolled hypertension insofar as he noted that it did not result in end organ damage. ECF Dkt. #10-2, p. 55. Plaintiff attributed her edema and headaches to her uncontrolled blood pressure, however, Dr. Lancaster attributed those problems to her blood pressure medication.

Likewise, the ALJ discounted Plaintiff's borderline intellectual functioning because of her previous work experience, particularly her cashier position at Goodwill where she was required to make change for customers. *Id.* at 58. Nonetheless, the ALJ limited Plaintiff to simple, routine, repetitive, one and two step tasks, but not in a fast paced or high production work environment. Although the ALJ based this limitation on Plaintiff's affective disorder, she does not contend that the jobs identified by the VE are beyond her intellectual capacity. Accordingly, Plaintiff's challenges to the weight given to medical opinions in this case, and the ALJ's consideration of her "non-severe" impairments do not have merit.

In her third argument, Plaintiff contends that the ALJ failed to properly consider her obesity, which he characterized as a severe impairment. In *Young v. Comm'r of Soc. Sec.*, 2011 WL 2182869, *7 (N.D.Ohio), the court explained it is "up to the claimant to furnish medical and other evidence which the 'Social Security Administration can use to reach conclusions about [a claimant's] medical impairment and its effect on [his] ability to work on a sustained basis.' " *Id.* (quoting 20 C.F.R. § 404.1512(a)). Despite being advised to lose weight, Plaintiff never accomplished any substantial weight loss. However, there is no evidence in Dr. Lancaster's medical notes that Plaintiff's obesity had an affect on her ability to work. As stated earlier, Dr. Lancaster's opinion that Plaintiff was incapable of performing light work was wholly inconsistent with her medical notes, which mentioned disabling back pain for approximately one month in 2002. Given the absence of any evidence that plaintiff's obesity has increased the severity of her other limitations, the record demonstrates that the ALJ sufficiently considered plaintiff's obesity in

formulating her RFC.  See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.2009).

In her final argument, Plaintiff asserts that the ALJ failed to fairly and fully develop the evidence on behalf of an unrepresented claimant.  "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110–11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). "The ALJ has a 'special duty' to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel." *Lipsey v. Comm'r of Soc. Sec.*, No. 2011 WL 761484 at *5 (W.D.Mich. Jan.24, 2011) (citing *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1051-52 (6th Cir.1983).  However, the fact that Plaintiff appeared at the hearing without counsel is not alone cause for error. See *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986).  The determination of whether the ALJ has failed to fully develop the record is made on a case-by-case basis by examining the record.  *Lashley* at 1052 ("There is no bright line test for determining when the administrative law judge ... failed to fully develop the record.").  As long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record. See *Dotson v. Dotson Coal Co.*, No. 89–3157, 1990 WL 4056, at *1 (6th Cir. Jan. 23, 1990).

Plaintiff contends that the ALJ did not question Plaintiff about her medical condition or her impairments.  However, rather than identifying relevant facts in the record that could have been brought to light at the hearing, Plaintiff writes, "One could go on at length about what the ALJ did not do and what he did not ask at the hearing.  ECF Dkt. #11, p. 780.  The only specific criticism leveled in the  brief is that the ALJ did not ask Plaintiff about her fatigue, shortness of breath, pain, or her ability to sit, stand, walk or lift.

At the hearing, the ALJ explained that his disability determination would be based upon Plaintiff's prior to her DLI, September 30, 2003.  ECF Dkt. 10-3, p. 70.  Plaintiff testified that she graduated from high school but that she attended classes for students with learning disabilities.  *Id.* at 73. She further testified that she could not read or write well.  Plaintiff provided a brief summary

of her previous jobs, with the ALJ focusing on the job with the longest duration.  Plaintiff worked at Goodwill for approximately two years as a part-time cashier and processor, although she occasionally worked forty hours a week.  *Id.* at 76.  Plaintiff conceded that she worked the cash register for two hour periods, and was able to make change, but needed help to count the drawer at closing time.  *Id.*

After reviewing Plaintiff's job history, the ALJ specifically inquired about her health problems from 2001 through 2003.  Plaintiff stated that she suffered low back pain.  Plaintiff stated at the hearing that she had health insurance at the time of the hearing through her husband's employer and that she was covered by his insurance during the relevant time period.  The ALJ asked Plaintiff if she understood what edema was, and Plaintiff testified that she did not.  After he explained the problem, she acknowledged that she had edema in her legs during the relevant time period.  At the hearing, she was 238 pounds.  *Id.* at 81.  When asked her lowest weight in the last ten years, she stated that she was 140 pounds in 1974.  *Id.* at 82.  The ALJ asked Plaintiff to describe any other medical problem she suffered in 2003, and she responded that she suffered from depression.  *Id.*  She stated that she saw Dr. Henry D. Debiec, D.O., in 2003.  Dr. Debiec's medical notes were a part of the record.  She saw Dr. Debiec from November of 2002 through March of 2003.  Although his medical notes are largely illegible, it appears that Dr. Debiec treated Plaintiff for GERD, anxiety, hypertension, headaches, bowel problems, and fatigue.  ECF Dkt. #10-29, p. 526-535.  In January of 2003, Plaintiff underwent an M.R.I., presumably due to her headaches, which revealed a sinus infection.  *Id.* at 530.

In a symptoms report completed by Plaintiff on July 27, 2002, she describes debilitating pain, fatigue, and shortness of breath. ECF Dkt. #10-16, p. 312-322.  She described her pain on good days (which occurred two or three times a week) to be two out of ten.  She described her bad days (which occurred eight days a week) to be ten out of ten.  Despite having two or three good days a week, Plaintiff claimed that she could no longer cook, shop, or do household chores.  She also claimed that she could not eat much any more and that it took her 25 minutes to get up the stairs.

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 416.929.  In order for pain or other subjective complaints to be considered disabling, there

-12-

must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

Here, there is evidence of mild degeneration of the spine, however, that evidence alone is insufficient to demonstrate Plaintiff's inability to perform light work. When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged.  It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record.  An ALJ is not required to accept a claimant's own testimony regarding her pain.  *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).

Plaintiff argues that the ALJ failed to elicit information regarding Plaintiff's limitations during the relevant time period.  To the contrary, the ALJ specifically asked Plaintiff to identify her medical problems from 2001 to 2003.  Likewise, Plaintiff's symptom report from 2002 was a part of the record, and the report described in detail Plaintiff's allegedly severe physical limitations.  Accordingly, there was sufficient evidence of Plaintiff's allegations of severe pain in the record, and the ALJ did not fail in creating a record in this case.  The ALJ predicated his findings on Dr. Lancaster's treatment records, which chronicle Plaintiff's treatment on a biweekly basis during a large portion of the relevant time period, and not a lack of evidence of Plaintiff's allegations of extreme debilitating pain.  Therefore, Plaintiff's final argument is not well-taken.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: February 28, 2012

   ___*/s/George J. Limbert*_____
   GEORGE J. LIMBERT
   UNITED STATES MAGISTRATE JUDGE

-14-